1  Marcus J. Jackson (SBN 205792)
   Attorney at Law
2  751 Center Dr., Suite 108-456
   San Marcos, CA 92069
3

4  David M. Arbogast (SBN 167571)
   David@SpiroMoss.com
5  Ira Spiro (SBN 67641)
   Ira@SpiroMoss.com
6  SPIRO MOSS BARNESS LLP
   11377 W. Olympic Boulevard, Fifth Floor
7  Los Angeles, CA 90064-1683
   Phone: (310) 235-2468; Fax: (310) 235-2456
8
   Jeffrey K. Berns (SBN 131351)
9  jberns@jeffbernslaw.com
   LAW OFFICES OF JEFFREY K. BERNS
10 19510 Ventura Boulevard, Suite 200
   Tarzana, California 91356
11 Phone: (818) 961-2000; Fax: (818) 867-4820

Paul R. Kiesel (SBN 119854)
kiesel@kbla.com
Patrick DeBlase (SBN 167138)
deblase@kbla.com
Michael C. Eyerly (SBN 178693)
eyerly@kbla.com
KIESEL BOUCHER LARSON LLP
8648 Wilshire Boulevard
Beverly Hills, California 90211
Phone: (310) 854-4444
Fax: (310) 854-0812

12 Attorneys for Plaintiff and all others Similarly Situated    '08 CV 0089 WQH JMA

13                    **UNITED STATES DISTRICT COURT**

14        **SOUTHERN DISTRICT OF DISTRICT OF CALIFORNIA**

15 FRANCENA D. PENCE, individually and on )    CASE NO. _____
   behalf of all others similarly situated,  )
16                                           )    **CLASS ACTION COMPLAINT FOR:**
                                             )
17            Plaintiff,                      )    (1)  **Violations of the Truth in Lending Act, 15**
                                             )         **U.S.C. §1601, et seq;**
18      v.                                   )
                                             )    (2)  **Violation of Bus. & Prof. Code §17200, et seq.**
19                                           )         **- "Unlawful" Business Practices (TILA);**
   UNION FIDELITY MORTGAGE, INC., and )
20 DOES 1 through 10 inclusive,             )    (3)  **Fraudulent Omissions;**
                                             )
21            Defendants.                     )    (4)  **Violation of Bus. & Prof. Code §17200, et seq.**
                                             )         **– "Unfair" and "Fraudulent" Business**
22                                           )         **Practices;**
                                             )
23                                           )    (5)  **Breach of Contract;**
                                             )
24                                           )    (6)  **Breach of the Covenant of Good Faith and**
                                             )         **Fair Dealing; and**
25                                           )
                                             )    (7)  **Violation of Bus. & Prof. Code §17200, et**
26 _____ )         **seq. – "Unlawful" Business Practices (Fin.**
                                                  **Code § 22302)**
27                                                **JURY TRIAL DEMANDED**

28

1    Plaintiff, FRANCENA D. PENCE, individually and on behalf of all others similarly situated

2    alleges as follows:

3

4                                            **I.**

5                                   **INTRODUCTION**

6    1.    This is an action pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. §1601, *et*

7    *seq.,* California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.,* and other

8    statutory and common law in effect.  Plaintiff, JASON LEE SOLOKO, individually, and on behalf of all

9    others similarly situated, brings this action against Defendant, UNION FIDELITY MORTGAGE, INC.,

10   and DOES 1-10 (collectively "Defendant"), based, in part, on Defendant's failure to clearly and

11   conspicuously disclose to Plaintiff and the Class Members, in Defendant's Option Adjustable Rate

12   Mortgage ("ARM") loan documents, and in the required disclosure statements, accompanying the loans,

13   (i) the actual interest rate on the note(s) (12 C.F.R. § 226.17); (ii) that payments on the notes at the teaser

14   rate will result in negative amortization and that the principle balance will increase (12 C.F.R. § 226.19);

15   and (iii) that the initial interest rate provided was discounted and does not reflect the actual interest that

16   Plaintiff and the Class members would be paying on the Note(s).

17

18                                           **II.**

19                                   **THE PARTIES**

20   2.    Plaintiff, FRANCENA D. PENCE ("Plaintiff") is, and at all times relevant to this

21   Complaint was, an individual residing in Farmersville, California.  On or about March 12, 2007,

22   Plaintiff refinanced her existing home loan and entered into an Option ARM loan agreement with

23   Defendant.  The Option ARM loan was secured by Plaintiff's primary residence.  Attached hereto as

24   Exhibit 1 is a true and correct copy of the Note and Truth and Lending Disclosure Form pertinent to this

25   action.

26   3.    Defendant, UNION FIDELITY MORTGAGE, INC., is and/or was a California

27   corporation licensed to do, and is and/or was doing business in California.  At all relevant times hereto

28   UNION FIDELITY MORTGAGE, INC. was and is engaged in the business of promoting, marketing,

1   distributing and selling the Option Arm loans that are the subject of this Complaint. UNION FIDELITY

2   MORTGAGE, INC. transacts business in San Diego County, California and at all relevant times

3   promoted, marketed, distributed, and sold Option Arm loans throughout the United States, including San

4   Diego County, California. UNION FIDELITY MORTGAGE, INC. has significant contacts with San

5   Diego County, California, and the activities complained of herein occurred, in whole or in part, in San

6   Diego County, California.

7        4.    Defendant, UNION FIDELITY MORTGAGE, INC., and DOES 1 through 10, shall

8   hereinafter be referred to collectively as "Defendant."

9        5.    At all times mentioned herein, Defendants, and each of them, were engaged in the

10   business of promoting, marketing, distributing, and selling the Option ARM loans that are the subject of

11   this Complaint, throughout the United States, including San Diego County, California.

12        6.    Plaintiff is informed, believes, and thereon alleges, that each and all of the

13   aforementioned Defendants are responsible in some manner, either by act or omission, strict liability,

14   fraud, deceit, fraudulent concealment, negligence, respondeat superior, breach of contract or otherwise,

15   for the occurrences herein alleged, and that Plaintiff's injuries, as herein alleged, were proximately

16   caused by the conduct of Defendants.

17        7.    Plaintiff is informed, believes, and thereon alleges, that at all times material hereto and

18   mentioned herein, each of the Defendants (both named and DOE defendants) sued herein were the agent,

19   servant, employer, joint venturer, partner, division, owner, subsidiary, alias, assignee and/or alter-ego of

20   each of the remaining Defendants and were at all times acting within the purpose and scope of such

21   agency, servitude, joint venture, division, ownership, subsidiary, alias, assignment, alter-ego, partnership

22   or employment and with the authority, consent, approval and ratification of each remaining Defendant.

23        8.    At all times herein mentioned, each Defendant was the co-conspirator, agent, servant,

24   employee, assignee and/or joint venturer of each of the other Defendants and was acting within the

25   course and scope of said conspiracy, agency, employment, assignment and/or joint venture and with the

26   permission and consent of each of the other Defendants.

27        9.    Plaintiff is informed, believes, and thereon alleges, that Defendants, UNION FIDELITY

28   MORTGAGE, INC. and DOES 1-10, and each of them, are, and at all material times relevant to this

1    Complaint, performed the acts alleged herein and/or otherwise conducted business in California.

2    Defendants, and each of them, are corporations or other business entities, form unknown, have, and are

3    doing business in this judicial district.

4         10.    Plaintiff is informed, believes, and thereon alleges, that DOES 1 through 10, inclusive,

5    are securitized trusts, equity funds, collateralized debt obligations (CDO), CDO underwriters, CDO

6    trustees, hedge funds or other entities that acted as additional lenders, loan originators and/or are

7    assignees to the loans which are the subject of this action.  Plaintiff will seek leave of Court to replace

8    the fictitious names of these entities with their true names when they are discovered by herein.

9         11.     The true names and capacities, whether individual, corporate, associate or otherwise, of

10   Defendants DOES 1 through 10, inclusive, and each of them, are unknown to Plaintiff at this time, and

11   Plaintiff therefore sues said Defendants by such fictitious names.  Plaintiff alleges, on information and

12   belief, that each Doe defendant is responsible for the actions herein alleged.  Plaintiff will seek leave of

13   Court to amend this Complaint when the names of said Doe defendants have been ascertained.

14        12.    Plaintiff is informed, believes, and thereon alleges, that at all times relevant during the

15   liability period, that Defendants, and each of them, including without limitation those Defendants herein

16   sued as DOES, were acting in concert or participation with each other, or were joint participants and

17   collaborators in the acts complained of, and were the agents or employees of the others in doing the acts

18   complained of herein, each and all of them acting within the course and scope of said agency and/or

19   employment by the others, each and all of them acting in concert one with the other and all together.

20

21                                    **III.**

22                        **JURISDICTION AND VENUE**

23        13.    This Court has subject matter jurisdiction pursuant to 15 U.S.C § 1601 *et seq.* and 28

24   U.S.C. § 1331.

25        14.    This Court has personal jurisdiction over the parties in this action by the fact that

26   Defendants are either individuals who reside in this District within California or are corporations duly

27   licensed to do business in California.

28   / / /

15.     Venue is proper within this District and Division pursuant to 28 U.S.C. §1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in this district, and because there is personal jurisdiction in this district over the named Defendant because it regularly conducts business in this judicial district.

## IV.

## FACTS COMMON TO ALL CAUSES OF ACTION

16.     UNION FIDELITY MORTGAGE, INC. ("Defendant") sells a variety of home loans. The OPTION ARM or adjustable rate mortgages are the loans that are the subject of this Complaint.

17.     The instant action arises out of residential mortgage loan transactions in which Defendant failed to disclose pertinent information in a clear and conspicuous manner to Plaintiff and the Class members, in writing, as required by law.

18.     This action also concerns Defendant's unlawful, fraudulent and unfair business acts or practices. Defendant engaged in a campaign of deceptive conduct and concealment aimed at maximizing the number of consumers who would accept this type of loan in order to maximize Defendant's profits, even as Defendant knew their conduct would cause many of these consumers to lose their homes through foreclosure.

19.     Plaintiff, along with thousands of other similarly situated consumers, were sold an Option ARM home loan by Defendant. The Option ARM loan sold to Plaintiff and the Class is a deceptively devised financial product. The loan has a variable rate feature with payment caps. The product was sold based on the promise of a low fixed payment based on a low listed interest rate, when in fact Plaintiff and the Class were charged a different, much greater interest rate than promised. Further, Defendant failed to disclose, and by omission, failed to inform Plaintiff of the fact that Defendant's Option ARM loan was designed to, and did, cause negative amortization to occur. Further still, once lured into these loans, consumers cannot easily extricate themselves from these loans because Defendant's included in these loans a stiff and onerous prepayment penalty making it extremely difficult, if not impossible, for borrowers to extricate themselves from these loans.

///

-5-

20.     The Option ARM loan Defendant sold to Plaintiff and the Class violates the Truth In Lending Act (TILA).  TILA is supposed to protect consumers; it mandates certain disclosures be made by lenders to borrowers concerning the terms and conditions of their home loans.  Defendants failed to make these disclosures in connection with the Option ARM loan sold to Plaintiff and the Class.

21.     At all times relevant, Defendant sold their Option ARM loan product to consumers, including Plaintiff, in a false or deceptive manner.  Defendant's loan documents indicated that the loan would have a very low payment for the first three (3) to five (5) years and there is no indication of negative amortization.  In furtherance of their scheme, Defendant listed a low "teaser" rate in the Note(s) and a low corresponding payment schedule in the TILA Disclosure Statement (hereafter "TILDS") to lure Plaintiff and the Class members into purchasing Defendant's Option ARM loan product.  However, the low "teaser" rate was illusory, a false promise.  Plaintiff and others similarly situated did not receive the benefit of the low rate promised to them.  Once signed on to Defendant's loan, the interest rate applied to Plaintiff's and Class members' loans was immediately and significantly increased.

22.     Plaintiff and others similarly situated were consumers who applied for a mortgage loan through Defendant.  During the loan application process, in each case, Defendant intended Plaintiff and the Class members to believe that in entering these loan contracts that they would be able to have low mortgage payments.  Defendant initiated this scheme in order to maximize the amount of the loans it sold to consumers and to maximize it's profits.

23.     Based on the Defendant's representations, and the misconduct alleged herein, Plaintiff and the Class members agreed to finance their primary residence through Defendant's Option ARM loan.  Plaintiff and Class members were sold a home loan with a low interest rate of between 1% and 3.0% interest rate (the "teaser" rate), and a corresponding payment schedule based on that the interest rate for the first three (3) to five (5) years of the loan.  Defendants also represented to Plaintiff, and Plaintiff reasonably believed, that if she made payments based on the promised low interest rate, which were the payments reflected in the written payment schedule provided to her by Defendant, that the loan would be a no negative amortization home loan and that Plaintiff's payments would be applied to both principal and interest.

///

24.      After, the purported three (3) - five (5) year fixed interest period, Plaintiff and the Class

members reasonably believed, based on the representations contained in the documents Defendant

provided to Plaintiff and the Class members, that they would be able to refinance their loan and get a

new loan before their scheduled payments increased.  However, the payment schedule provided by

Defendants failed to disclose, and by omission, failed to inform these consumers that due to the negative

amortization that was purposefully built into these loans, Plaintiff and the Class members would be

unable to refinance their homes as there would be little or no equity left to refinance.

25.      Plaintiff believed these facts to be true because that is what the Defendants intended

consumers to believe.  Defendant aggressively marketed their product as a fixed, low interest home loan.

Defendant knew that if marketed and sole in such a manner, their Option ARM loan product would be a

hugely popular and profitable product for them.  Defendant also knew, however, that they were selling

their product in a false and deceptive manner.  While Defendant trumpeted their low rate loans to the

public, Defendant knew their promise of a low interest was a mirage.

26.      In fact, Defendant's Option ARM loan possessed a low, fixed *payment* but not a low,

fixed interest rate.  Unbeknownst to Plaintiff and the Class members, the actual interest rate they were

charged on their loans was not fixed, was not the low teaser interest rate stated in the loan

documentation and was in fact considerably higher than going market rates.  And, after purchasing

Defendant's Option ARM loan product, Plaintiff and Class members did not actually receive the benefit

of the low teaser rate at all or in some cases, at best, received that teaser rate for only a single month.

Immediately, thereafter, Defendant in every instance and for every loan, secretly increased the interest

rate they charged consumers.  The now-increased interest charges incurred by Plaintiff and the Class

members, over and above the fixed interest payment rate, were added to the principal balance on their

home loans in ever increasing increments, substantially reducing the equity in these borrowers' homes.

27.      In stark contrast to this reality, Defendant, through the standardized loan documents they

created and supplied to Plaintiff, stated that negative amortization was only a mere possibility.

Defendant concealed and failed to disclose the fact that the loan, as presented and designed, in fact,

guaranteed negative amortization.  Defendant failed to disclose and omitted the objectively material fact

that negative amortization was absolutely certain to occur if consumers followed the payment schedule

1  listed by Defendant in the TILDS. This information was objectively material and necessary for

2  consumers to make an informed decision because this would have revealed that the loan's principal

3  balance would increase if the payment schedule was followed, thereby rendering it impossible to

4  refinance the loan at or around the time the prepayment penalty expired and/or by the time the interest

5  and payment rates re-set.  In this respect, Defendant utterly failed to place any warning on the Truth and

6  Lending Disclosure Form about negative amortization.

7       28.  At all times relevant, once Plaintiff and the Class members accepted Defendant's Option

8  ARM loan contract, they had no viable option by which to extricate themselves because these Option

9  ARM loan agreements included a draconian pre-payment penalty for a period of up to three years.

10       29.  The Option ARM loans sold by Defendant all have the following uniform characteristics:

11         (a)  There is an initial low interest rate or "teaser" rate that was used to entice the

12  Plaintiff into entering into the loan.  The rate offered was typically 1%-3%;

13         (b)  The loan has with it a corresponding low payment schedule.  The documentation

14  provided intended to misleadingly portray to consumers that the low payments for the first three (3) to

15  five (5) years were a direct result of the low interest rate being offered;

16         (c)  The initial payments in the required disclosures were equal to the low interest rate

17  being offered.  The purpose was to assure that if someone were to calculate what the payment would be

18  at the low offered interest rate, it corresponded to the payment schedule.  This portrayal was intended to

19  further mislead consumers into believing that the payments were enough to cover all principal and

20  interest;

21         (d)  The payment has a capped annual increase on the payment amount; and

22         (e)  The loan includes a prepayment penalty preventing consumers from securing a new

23  loan for a period of up to three (3) years.

24       30.  Defendant uniformly failed to disclose, and by omission, failed inform consumers,

25  including Plaintiff and the Class members, in a clear and conspicuous manner that the fixed "teaser" rate

26  offered by Defendants was actually never applied to their loans, or, at best, was only applied for thirty

27  (30) days.  Thereafter, the true interest charged on the loans was significantly higher than the promised

28  rate.

31.    Defendant uniformly failed to disclose and by omission failed to inform consumers, including Plaintiff and the Class members, that the payments set forth in Defendant's schedule of payments were insufficient to cover the actual amount they were being charged for the loan, and that this was, in fact, a loan that would cause the Plaintiff's and the Class members to lose the equity they have in their home.

32.    Defendant uniformly failed to disclose and by omission failed to inform consumers, including Plaintiff and the Class members, that when the principal balance increased to a certain level, they would no longer have the option of making the fixed interest payment amount.

33.    Disclosing whether a payment will result in negative amortization is of critical importance to consumers. If the disclosed payment rate is insufficient to pay both principle and interest, one of the consequences of negative amortization is a loss of equity. Defendants are and at all times relevant hereto have been aware that clear and conspicuous disclosure of the actual interest rate and a payment rate sufficient to avoid negative amortization and the concomitant loss of equity is extremely important material information.

34.    At all times relevant, Defendant, and each of them, knew or should have known, or were reckless in not knowing, that: (i) the payment rate provided to Plaintiff and the Class members were insufficient to pay both interest and principle; (ii) that negative amortization was certain to occur if Plaintiff and the Class members made payments according to the payment schedule provided by Defendant; and (iii) that loss of equity and/or loss of Plaintiff's and the Class members residence was substantially certain to occur if Plaintiff and the Class members made payments according to the payment schedule provided by Defendant.

35.    In spite of its knowledge, Defendant sold its Option ARM loans as product that would provide Plaintiff and the Class members with a low payment and interest rate for the first three (3) to five (5) years of the loan, and at all times relevant, failed to disclose and/or concealed by making partial representations of material facts when Defendant had exclusive knowledge of material facts that negative amortization was certain to occur. This concealed and omitted information was not known to Plaintiff and the Class members and which, at all times relevant, Defendant failed to disclose and/or actively concealed by making such statements and partial, misleading representations to Plaintiff and all

1  others similarly situated. Because the ARM loans did not provide a low interest rate for the first three

2  (3) to five (5) years of the Note and the payment disclosed by Defendant was insufficient to pay both

3  principle and interest, negative amortization occurred.

4      36.    The true facts about Defendant's ARM loans is that they do not provide the low interest

5  rate promised, and are certain to result in negative amortization.

6      37.    Disclosure of a payment rate that is sufficient to pay both principle and interest on the

7  loans is of critical importance consumers. If the disclosed payment rate is insufficient to pay both

8  principle and interest, one of the consequences is that negative amortization or loss of equity will occur.

9  Defendant are and at all times relevant hereto have been aware that the ability of the disclosed payment

10 rate to pay both principle and interest so as to avoid negative amortization is one of the most important

11 terms of a loan.

12     38.    To this day, Defendant continues to conceal material information from consumers, and

13 the public, that: (i) the payment provided to Plaintiff and the Class members is and was insufficient to

14 pay both principle and interest; (ii) if the disclosed payment schedule is followed, Plaintiff and the Class

15 members will suffer negative amortization; and (ii) loss of equity and/or possession of the property is

16 substantially certain to occur if the disclosed payment schedule is followed. Nevertheless, Defendant

17 has refused to clearly and conspicuously disclose to Plaintiff and the Class members the existence of this

18 important material information and the injury caused thereby, including but not limited to the loss of

19 equity.

20     39.    In the end, the harm caused by Defendant's failures to disclose and omissions, as alleged

21 herein, grossly outweighs any benefit that could be attributed to them.

22     40.    Knowing the truth and motivated by profit and market share, Defendant has knowingly

23 and willfully engaged in the acts and/or omissions to mislead and/or deceive Plaintiff and others

24 similarly situated.

25     41.    The Option ARM loans have resulted and will continue to result in significant loss and

26 damage to the Class Members, including but not limited to the loss of equity these consumers have or

27 had in their homes.

28 ///

42.    The facts which Defendant misrepresented and concealed, as alleged in the preceding paragraphs, were material to the decisions about whether to purchase the Option ARM loans in that Plaintiff and others similarly situated would not have purchased these loans but for Defendant's unlawful, unfair, fraudulent and/or deceptive acts and/or practices as alleged herein.

43.    Defendant engaged in the unlawful, unfair, fraudulent, untrue and/or deceptive marketing scheme to induce consumers to purchase their ARM loans.

44.    Defendant's unlawful, unfair, fraudulent, untrue and/or deceptive acts and/or practices were committed with willful and wanton disregard for whether or not Plaintiff or others similarly situated would receive a home loan that would actually provide the low interest and payment rate for the first three (3) to five (5) years of the loan sufficient to pay both principle and interest.

45.    Upon information and belief, and at all times relevant during the liability period, Defendant possessed full knowledge and information concerning the above facts about the ARM loans, and otherwise marketed and sold these ARM loans throughout the United States, including the State of California.

## V.

## CLASS ACTION ALLEGATIONS

46.    Plaintiff brings this action on behalf of herself, and on behalf of all others similarly situated (the "Class") pursuant to Federal Rule of Civil Procedure, Rules 23(a), and 23(b), and the case law thereunder. The classes Plaintiff seeks to represent are defined as follows:

> **The California Class**: All individuals who, within the four year period preceding the filing of Plaintiff's Complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendant on their primary residence located in the State of California. Excluded from the California Class are Defendant's employees, officers, directors, agents, representatives, and their family members; and

> **The National Class**: All individuals in the United States of America who, within the four year period preceding the filing of Plaintiff's complaint through the date notice is mailed to the Class, received an Option ARM loan through Defendant on their primary residence located in the United States of America. Excluded from the National Class are Defendant's employees, officers, directors, agents, representatives, and their family members.

1    An appropriate sub-Class exists for the following Class Members:

2    All individuals in the United States of America who, within the three year
     period preceding the filing of Plaintiff's complaint through the date notice
3    is mailed to the Class, received an Option ARM loan through Defendant
     on their primary residence located in the United States of America.
4    Excluded from the National sub-Class are Defendant's employees,
     officers, directors, agents, representatives, and their family members.

5

6    Plaintiff reserves the right to amend or otherwise alter the Class definitions presented to the

7    Court at the appropriate time, or propose or eliminate sub-Classes, in response to facts learned through

8    discovery, legal arguments advanced by Defendant or otherwise.

9    47.    Numerosity: The Class is so numerous that the individual joinder of all members is

10   impracticable under the circumstances of this case. While the exact number of Class members is

11   unknown at this time, Plaintiff is informed and believes that the entire Class or Classes consist of

12   approximately tens of thousands of members.

13   48.    Commonality: Common questions of law or fact are shared by the Class members. This

14   action is suitable for class treatment because these common questions of fact and law predominate over

15   any individual issues. Such common questions include, but are not limited to, the following:

16   (1)    Whether Defendant's acts and practices violate the Truth in Lending Act, 15

17   U.S.C. §1601, et seq;

18   (2)    Whether Defendant's conduct violated 12 C.F.R. § 226.17;

19   (3)    Whether Defendant's conduct violated 12 C.F.R. § 226.19;

20   (4)    Whether Defendant engaged in unfair business practices aimed at deceiving

21   Plaintiff and the Class members before and during the loan application process;

22   (5)    Whether Defendant, by and through their officers, employees, and agents failed to

23   disclose that the interest rate actually charged on these loans was higher than the

24   rate represented and promised to Plaintiff and the Class members;

25   (6)    Whether Defendant, by and through their officers, employees and agents

26   concealed, omitted and/or otherwise failed to disclose information they were

27   mandated to disclose under TILA;

28   / / /

-12-

(7)   Whether Defendant failed to disclose the true variable nature of interest rates on adjustable rate mortgage loans and adjustable rate home equity loans;

(8)   Whether Defendant failed to properly disclose the process by which negative amortization occurs, ultimately resulting in the recasting of the payment structure over the remaining lifetime of the loans;

(9)   Whether Defendant's failure to apply Plaintiff's and the Class members' payments to principal as promised in the form Notes constitutes a breach of contract, including a breach of the covenant of good faith and fair dealing;

(10)   Whether Defendant's conduct in immediately raising the interest rate on consumers' loans so that no payments were applied to the principal balance constitutes breach of the covenant of good faith and fair dealing;

(11)   Whether Defendant's marketing plan and scheme misleadingly portrayed or implied that these loans were fixed rate loans, when Defendant knew that only the periodic payments were fixed (for a time) but that interest rates were not, in fact, "fixed;"

(12)   Whether the terms and conditions of Defendant's Option ARM home loan are unconscionable;

(13)   Whether Plaintiff and the Class are entitled to damages;

(14)   Whether Plaintiff and the Class members are entitled to punitive damages; and

(15)   Whether Plaintiff and the Class members are entitled to rescission.

49.   <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Class members.  Plaintiff and the other Class members were subjected to the same kind of unlawful conduct and the claims of Plaintiff and the other Class members are based on the same legal theories.

50.   <u>Adequacy</u>:  Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the other members of the Class Plaintiff seeks to represent.  Plaintiff has retained counsel competent and experienced in complex class action litigation and Plaintiff intends on prosecuting this action vigorously.   The interests of members of the Class will be fairly and adequately protected by Plaintiff and her counsel.

51.    Ascertainable Class:  The proposed Classes are ascertainable in that the members can be identified and located using information contained in Defendant's mortgage lending records.

52.    This case is brought and can be maintained as a class action under Rule 23(b)(1), 23(b)(2), and 23(b)(3):

(a)    Risk of Inconsistent Judgments:  The unlawful acts and practices of Defendant, as alleged herein, constitute a course of conduct common to Plaintiff and each Class member. Prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of individual Class members to protect their interests;

(b)    Injunctive and/or Declaratory Relief to the Class is Appropriate:  Defendant, and each of them, have acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief with respect to the Class as a whole appropriate; and

(c)    Predominant Questions of Law or Fact:  Questions of law or fact common to the Class members, including those identified above, predominate over questions affecting only individual Class members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would require. Further, an important public interest will be served by addressing the matter as a class action.  The cost to the court system of adjudicating each such individual lawsuit would be substantial.

/ / /

/ / /

/ / /

# VI.

## FIRST CAUSE OF ACTION

### (Violations of Truth in Lending Laws, 15 U.S.C. §1601, *et seq.*,

### (Against All Defendants)

53.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

54.    15 U.S.C. §1601, *et seq.*, is the Federal Truth in Lending Act ('TILA"). The Federal Reserve Board of Governors implements the Federal Truth in Lending Act through Regulation Z (12 C.F.R. §226 ) and its Official Staff Commentary. Compliance by lenders with Regulation Z became mandatory October 1, 1982. Likewise, Official Staff Commentary issued by the Federal Reserve Board is also binding on all lenders.

55.    The purpose of TILA is to protect consumers. This is stated in 12 C.F.R. § 226.1, which reads:

§226.1 Authority, purpose, coverage, organization, enforcement and liability...

(b)    Purpose. The purpose of this regulation is to promote the informed use of consumer credit by requiring disclosures about its terms and costs. The regulation also gives consumers the right to cancel certain credit transactions that involve a lien on a consumer's principal dwelling . . .

56.    Reg. Z also mandates very specific disclosure requirements regarding home loans with which lenders, including Defendant, must comply:

§ 226.17. General disclosure requirements.

(a)  Form of disclosures. (1) The creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that the consumer may keep. The disclosures shall be grouped together, shall be segregated from everything else, and shall not contain any information not directly related to the disclosures required under § 226.18.

/ / /

-15-

CLASS ACTION COMPLAINT

57.     The purpose of the TILA is to assure a meaningful disclosure of credit terms so that the borrowers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit and to protect the consumer against inaccurate and unfair credit billing practices.

58.     Defendant's Option ARM loan violates TILA because Defendant failed to comply with the disclosure requirements mandated by Regulation Z and Official Staff Commentary issued by the Federal Reserve Board.  Defendant failed in a number of ways to clearly, conspicuously and/or accurately disclose the terms of the Option ARM loan to Plaintiff as Defendant were required to do under TILA.  These violations are apparent on the face of the TILA Disclosure Forms.

59.     The TILA violations committed by Defendant are more specifically detailed as follows:

**A.      Defendant's Failure to Clearly and Conspicuously Disclose The Actual Interest Rate Violates Truth in Lending Laws**

60.     12 C.F.R. § 226.17 and 12 C.F.R. § 226.19 require the lender to make disclosures concerning the interest rate in a clear and conspicuous manner.  Further, a misleading disclosure is as much a violation of TILA as a failure to disclose at all.  Defendant failed to meet the disclosure mandates required of them concerning the interest rate Defendant actually applied to Plaintiff's and Class members' loans, as well as the interest Defendant actually charged Plaintiff and the Class members.

61.     Defendant's disclosure in the Promissory Note concerning the interest rate is, at best, unclear and inconspicuous.  At worst, it is intentionally deceptive.  In either instance, it is certainly different than the interest rate set forth by Defendant in the TILD.  The interest rate information set forth by Defendant in the Note conflicts with the interest rate information set forth by Defendant in the TILA Disclosure Form.

62.     The interest rate set forth in the Note is the teaser rate that Defendant, in fact, applied to the loan for a single month.  However, at all times relevant during the liability period, Defendant did not make it clear in the Note(s) or TILDS that this low promised rate (the same rate upon which Defendant base the written payment schedule provided to Plaintiff) is only offered for the first thirty (30) days of the loan.  In furtherance of their scheme, Defendant employed the most convoluted, confusing and

1   circuitous methodology in describing the interest rate. In particular, Defendant used terms like "may"

2   when discussing potential interest rate increases, when in fact it was an absolute certainty the interest

3   rate listed would only be provided for the first thirty days of the loan, and would be raised when the first

4   payment was due. In one part of the Note, Defendant states that the promised low interest rate is the rate

5   until the "change date." A description of the change date is found in another part of the Note. The

6   convoluted and disjointed method employed by Defendant to provide this information to consumers

7   makes it extremely difficult, if not impossible, for anyone to determine that, in fact, that the change date

8   corresponds to the very first monthly payment Plaintiff and the Class members made on their loans.

9        63.    The convoluted language used by Defendant to disclose the interest rate on Plaintiff's and

10   the Class members loans is not clear and conspicuous. Rather, the disclosures used by Defendant were

11   purposefully unclear and meant to mislead and deceive Plaintiff and the Class members. In particular, it

12   is virtually impossible to discern when Plaintiff and the Class members would receive the low interest

13   rate they were promised, if, in fact, it can be determined at all. And, the truth is that Plaintiff and the

14   Class members never received the low interest rate, or in some cases received it for only thirty days.

15   Defendant's promise of a low interest rate is and was wholly illusory and the deception, as alleged

16   herein, was uniformly practiced on Plaintiff and all Class members by Defendant to facilitate sales of

17   their loans to consumers.

18        64.    The Note also sets forth the amount of Plaintiff's and Class members' initial monthly

19   payments. That monthly payment amount is equal to what the payment would be if the listed low

20   interest rate promised to Plaintiff by Defendant was true and was, in fact, applied to the principal balance

21   on the loans. This is a further deception committed by Defendant, because the real interest rate charged

22   on the loans by Defendant is much higher than the low interest rate promised to Plaintiff and Class

23   members. Thus, the payment amount provided by Defendant was intended to and did deceive

24   consumers into falsely believing that they would, in fact, receive the teaser interest rate promised to

25   them.

26        65.    The TILDS is also confusing and deceptive for much the same reason. It shows the

27   scheduled payments for the first three (3) to five (5) years of the loan as being based on the low "teaser"

28   rate Plaintiff and Class members were promised, with the agreed 7.5% annual increase in the payment

1    amount.  In truth, however, this payment schedule has no real relation to the interest rate Defendant

2    actually charged Plaintiff and the Class members on their loans.

3        66.    At all times relevant during the liability period, Defendant failed to clearly, conspicuously

4    and accurately disclose the actual interest rate applied to Plaintiff's and Class members' loans.

5    Defendant also failed to disclose, and by omission, failed to inform Plaintiff and the Class members that

6    the payment amounts listed in the payment schedule did not include any amount towards the principle on

7    the loan and were, in fact, insufficient to pay all of the interest accuring.  Based on the payment schedule

8    listed in the Note and TILDS, Plaintiff and the Class members reasonably believed that the payments

9    would be sufficient to meet the loan obligations in the Note(s). Thus, Plaintiff and the Class members

10   reasonably believed that the low rate promised to them would be applied to their loans.  However, the

11   true fact is that the payment schedule provided by Defendant did not pay any principal on the loan at all

12   and only included a partial payment towards the interest Defendant charged Plaintiff and the Class

13   members for these loans.

14       67.    At all times relevant during the liability period, Defendant failed to clearly, conspicuously

15   and accurately disclose in the Note and TILDS a payment amount that was sufficient to pay both

16   principle and interest.  In particular, the Note(s) state that the payments will be applied to "principle and

17   interest" and Plaintiffs reasonably believed that if they made the payments according to Defendant's

18   payment schedule, the payments would, in fact, be paying off both principal and interest.   However, the

19   true fact is that the payment amounts stated in Defendant payment schedule did not include any principal

20   on the loans at all and were only a partial payment of the interest Defendants were charging on these

21   loans.

22       68.    At all times relevant during the liability period, Defendant failed to disclose, and by

23   omission, failed to inform consumers that if they followed the payment schedule provided by

24   Defendants, their payments will not be applied to principle at all and were not sufficient enough to cover

25   all of the interest Defendant charged on the loan(s).

26   / / /

27   / / /

28   / / /

CLASS ACTION COMPLAINT

**B.** **Defendant's Failure to Clearly and Conspicuously Disclose Negative Amortization Violates the Truth in Lending Laws**

69.     12 C.F.R. § 226.19 sets forth additional specific disclosure requirements for residential home loans:

> **§ 226.19.   Certain residential mortgage and variable-rate transactions.**
>
> . . .
>
> (b) Certain variable-rate transactions. If the annual percentage rate may increase after consummation in a transaction secured by the consumer's principal dwelling with a term greater than one year, the following disclosures must be provided at the time an application form is provided or before the consumer pays a non-refundable fee, whichever is earlier. . .
>
> (vii) *Any rules relating to changes in the index, interest rate, payment amount, and outstanding loan balance including, for example, an explanation of interest rate or payment limitations, negative amortization, and interest rate carryover.* (Emphasis added.)

70.     The negative amortization disclosure is required and must be made clearly and conspicuously, and done in a manner that does not obscure its significance.  The disclosure must state whether the loan and payments established under the terms dictated by the Defendant is a negative amortizing loan.

71.     In 1995, and continuing each time new Official Staff Commentary was issued, the Federal Reserve Board made clear that when the loan was a variable rate loan with payment caps, such as those that are the subject of this lawsuit, that the disclosure requires a definitive statement about negative amortization:

> 12 CFR Part 226
>
> [Regulation Z; Docket No. R-0863]
>
> Monday, April 3, 1995
>
> AGENCY: Board of Governors of the Federal Reserve System.
>
> ACTION: Final rule; official staff interpretation.

1                       "For the program that gives the borrower an option to cap

2                       monthly payments, the creditor must fully disclose the rules

3                     relating to the payment cap option, including the effects of

4                       exercising it (such as **negative amortization occurs** and

5                       that the principal balance **will increase**)…" (Found at

6                       C.F.R. § 226.19)

7        72.     At all times relevant, statutory and common law in effect make it unlawful for a lender,

8 such as Defendant, to fail to comply with the Federal Reserve Board's Official Staff Commentary as

9 well as Regulation Z and TILA.

10        73.     Defendant sold Plaintiffs and the Class members Option ARM loans which have a

11 variable rate feature with payment caps. Defendant failed to include any reference in the TILDS or in

12 the Note(s) that negative amortization would occur if Plaintiffs and the Class members followed the

13 payment schedule provided by Defendant.

14        74.     In fact, the only place in the Note where Defendant even inferentially reference negative

15 amortization caused Plaintiffs and all other similarly situated reasonable persons to believe that negative

16 amortization is only a mere possibility, rather than an absolute certainty. In fact, these loans were

17 designed in such a way so as to make negative amortization an absolute certainty. And, even when a

18 separate explanation was provided, Defendant omitted the important material fact that these loans and

19 payment schedules would, in fact, guarantee negative amortization.

20        75.     Defendant's statement in the Note(s): "[i]f the Minimum Payment is not sufficient to

21 cover the amount of the interest due then negative amortization will occur" was a half-truth and did not

22 alert or inform Plaintiffs that the payment schedule provided by Defendant would absolutely guarantee

23 that negative amortization was going to occur on these loans. Rather, Defendant made it appear that as

24 long as the payments were made according to the schedule listed in the TILDS, that there would be no

25 negative amortization.

26        76.     At all times relevant, Defendant's statement in the Note, TILDS, and any other

27 disclosures they provided, described negative amortization as only a mere possibility, and therefore was

28 misleading and deceptive. In fact, Defendant's Option ARM loan was designed in such a way as to

CLASS ACTION COMPLAINT

1 guarantee negative amortization. TILA demands more than a statement that the payment could be less,

2 or "may" be less, when Defendant knew that the payments were less, and would always be less, than the

3 full amount required to pay both principle and interest.

**C.    Defendant's Failure to Clearly and Conspicuously Disclose that the Initial Interest Rate is Discounted Violates Truth in Lending Laws**

6 77.    As previously stated, the informed use of credit means being able to make decisions, as

7 well as being able to plan an individual's finances. Every month consumers look at their income and

8 budget where their funds must be paid. The biggest investment in one's life is generally that person's

9 home. In fact, it is often referred to as "the American Dream" to own a home.

10 78.    Variable rate loans are based on a "margin" and an "index." The index is often the Prime

11 Rate or the LIBOR exchange rate. The margin is the amount the lender charges over that rate, basically

12 it is the lender's profit on the loan.

13 79.    TILA and Regulation Z require disclosures to be clear and conspicuous so people

14 understand what their obligations are. In particular, when the payment is not based on that index and

15 margin a separate disclosure is required. The disclosure must also inform that interest rate and payment

16 may go up and clearly and conspicuously provide  the circumstances under which the rate and payment

17 will increase. Further, the disclosure must inform the borrower what the true cost of the loan is..

18 80.    The Federal Reserve Board established disclosure requirements for variable rate loans.

19 26 C.F.R. § 226.19 requires a lender to disclose the frequency of interest rate and payment adjustments

20 to borrowers. If interest rate changes will be imposed more frequently or at different intervals than

21 payment changes, a creditor must disclose the frequency and timing of both types of changes.

22 81.    The disclosures required pursuant to 12 C.F.R. § 226.19 are extremely important because

23 Plaintiff and other consumers similarly situated need this information in order to budget their money.

24 They need to know if their house payments are going to go up so that they can plan for it. If the change

25 comes as a surprise, they face a much greater possibility of defaulting on their loans and losing their

26 homes.

27 82.    Here, Defendant states only that the interest rate *may* increase in the future. However, an

28 interest rate increase was in fact far more certain than this disclosure led Plaintiff and the Class members

1  to believe.  If Defendant had given the Plaintiff and the Class members the promised low interest rate for

2  any initial period of time, the interest rate was guaranteed to go up even without any change in the index.

3  Thus, the increase in the interest rate on these loans was not just a possibility; it was an absolute

4  certainty and Defendant failed and omitted this material information in their disclosures to Plaintiff and

5  the Class members.

6        83.    Defendant's loan documents state that the interest rate may increase during the term of

7  this transaction if the index increases.  This, however, was not the only circumstance that could cause an

8  increase in the interest rate because the disclosed interest rate was discounted.

9        84.    At all times relevant during the liability period, Defendant failed to disclose, and by

10  omission, failed to inform Plaintiff and the Class members that the initial interest rate was discounted,

11  creating the possibility of an increase even when the index did not rise.  Due to the initial discounted

12  interest rate being listed at 1% to 3%, the interest rate would increase because the index and margin were

13  between 5% and 8% higher.  Even when Defendants did provide a disclosure that stated the initial

14  payment was not based on the index, it did so in a manner that was not clear and conspicuous.  Because

15  the loan documents failed to provide this extremely important material information in a clear and

16  conspicuous manner that did not obscure its importance, Defendant disclosure failed to meet the

17  standards mandated under TILA.

18        85.    Defendant failed to disclose to Plaintiff and the Class members that their interest rate

19  was, with 100% certainty, going to increase, regardless of whether or not the index upon which their

20  loans are based changed.  As such, Defendant violated TILA and Regulation Z by providing Plaintiff and

21  the Class members with unclear, deceptive and poorly drafted or intentionally misleading disclosures.

22      **D.**    **Defendant's Failure to Disclose the Composite Interest Rate Violates Truth in**

23               **Lending Laws**

24        86.    Defendant provided Plaintiff and Class members with multiple, conflicting interest rates

25  when describing the costs of this loan.  On the TILDS Defendant set forth one interest rate, while on the

26  Note, Defendant set forth one or two other, different interest rates.

27        87.    The official staff commentary to 226 C.F.R. § 17(C)(8) states:

28            *Basis of disclosures in variable-rate transactions.* The disclosures for a

-22-

1    variable-rate transaction must be given for the full term of the transaction

2    and must be based on the terms in effect at the time of consummation.

3    Creditors should base the disclosures only on the initial rate and should

4    not assume that this rate will increase. For example, in a loan with an

5    initial rate of 10 percent and a 5 percentage points rate cap, creditors

6    should base the disclosures on the initial rate and should not assume that

7    this rate will increase 5 percentage points. **However, in a variable-rate**

8    **transaction with a** seller buydown that is reflected in the credit contract, a

9    consumer buydown, or **a discounted or premium rate, disclosures**

10    **should not be based solely on the initial terms. In those transactions,**

11    **the disclosed annual percentage rate should be a composite rate based**

12    **on the rate in effect during the initial period and the rate that is the**

13    **basis of the variable-rate feature for the remainder of the term.** (See

14    the commentary to section 226.17(c) for a discussion of buydown,

15    discounted, and premium transactions and the commentary to section

16    226.19(a)(2) for a discussion of the redisclosure in certain residential

17    mortgage transactions with a variable-rate feature.)

18    88.    The reason for this requirement is clear.  Consumers cannot make informed decisions

19    when they cannot compare the cost of credit to other proposals.  It is therefore incumbent upon

20    Defendant to show the composite interest rate in effect so that the borrowers can understand exactly

21    what they will be paying for the loan.

22    89.    A lender violates TILA, Reg. Z and the OTS guidelines by failing to list the composite

23    rate in variable rate loans that have a discounted initial rate.  The loan sold to Plaintiff and Class

24    members by Defendant is a variable-rate loan.  At all times relevant during the liability period,

25    Defendant listed an interest rate in the Note(s) that, in truth, would only be provided for the first thirty

26    days of a thirty year loan, and would, with one hundred percent certainty, be increased after that first

27    month.  Because Defendant failed to clearly and conspicuously disclose the composite annual percentage

28    rate on these loans, and instead listed different interest rates in different places in the documents

-23-

1  provided to consumers, Defendant violated TILA and Regulation Z, and failed to provide disclosures

2  that did not obscure relevant information.

3       90.    As a direct and proximate result of Defendant's violations of TILA, as alleged herein,

4  Plaintiff and the Class members have suffered injury in an amount to be determined at time of trial.  If

5  Defendant had not violated TILA and had instead clearly and conspicuously disclosed the material terms

6  of Defendant's Option ARM loan, as alleged herein, Plaintiff and the Class members would not have

7  entered into the home loan contracts which are the subject of this action.  Because Defendant failed to

8  make the proper disclosures required under TILA, Plaintiff and the Class members now seek redress in

9  an amount and/or type as proven at time of trial.

10      **D.    Defendant's Failure to Clearly and Conspicuously Disclose The Legal Obligation**

11          **Violates Truth in Lending Laws**

12       91.    12 C.F.R. § 226.17(c)(1) requires that "[t]he disclosures shall reflect the terms of the legal

13  obligation between the parties."

14       92.    Official binding staff commentary on 12 C.F.R. § 226.17(c)(1) requires that: "[t]he

15  disclosures shall reflect the credit terms to which the parties are legally bound as of the outset of the

16  transaction.  In the case of disclosures required under

17  § 226.20(c), the disclosures shall reflect the credit terms to which the parties are legally bound when the

18  disclosures are provided."

19       93.    The Official binding staff commentary further states, at 12 C.F.R.

20  § 226.17(c)(1)(2), that "[t]he legal obligation normally is presumed to be contained in the note or

21  contract that evidences the agreement."

22       94.    Official Staff Commentary to 12 C.F.R. § 226.17(c)(1) states that "[i]f a loan contains a

23  rate or payment cap that would prevent the initial rate or payment, at the time of the first adjustment,

24  from changing to the rate determined by the index or formula at consummation, the effect of that rate or

25  payment cap should be reflected in the disclosures."

26       95.    At all times relevant during the liability period, Defendant's Option ARM loans violated

27  12 C.F.R. § 226.17(c) in that the Note(s) and TILDS did not disclose, and by omission, failed to disclose

28  what Plaintiff's and the Class members' were legally obligated to pay.  In particular, the Note(s) charged

these borrowers a much higher monthly amount than what Defendant disclosed. Defendant accomplished this deception by only listing a partial payment in the TILDS, rather than a payment amount that was sufficient to pay what these borrowers were being charged for their loans, and were legally obligated to pay.

96.    As a direct and proximate result of Defendant's omissions and failures to clearly and conspicuously disclose Plaintiff's and the Class members legal obligations under the loans, Defendant took the partial payments and secretly added the deficit, each month, to principle, thereby causing negative amortization to occur.

**E.    Defendant's Failure to Clearly and Conspicuously Disclose the Effect of the Payment Cap on the True Cost of the Loan Violates Truth in Lending Laws**

97.    The Option ARM loans at issue each contained a variable rate feature with an initial teaser rate with payment caps. The payment cap is a limit on how much the payment may be increased annually. Its purpose is to provide borrowers with a limit on how much their payment can increase from year to year. The loans issued by Defendant had a 7.50% payment cap, which means that a borrower would only see their payment rise each year by a maximum of 7.50%. (i.e. a $1,000 monthly payment in year one, could go to a $1,075 payment in year two.)

98.    The Official Staff Commentary to 12 C.F.R. § 226.17(c)(1)(10)(iii)  states that "[i]f a loan contains a rate or payment cap that would prevent the initial rate or payment, at the time of the first adjustment, from changing to the rate determined by the index or formula at consummation, the effect of that rate or payment cap should be reflected in the disclosures." Thus, at all times relevant during the liability period, Defendant had a duty to Plaintiffs and the Class members to disclose the effect the payment caps would have on the loans in the TILD.

99.    At all times relevant during the liability period, Defendant failed to disclose, and by omission, failed to inform Plaintiff and the Class members that the payment cap would cause hundreds, if not thousands of dollars, each month, to be secretly added to principle.

100.    As a direct and proximate result, Defendant failed to disclose, and by omission, failed to inform Plaintiff and the Class members of the effect of the payment cap in violation of 12 C.F.R. § 226.17.

-25-

1    101.    WHEREFORE, Plaintiffs and the Class members are entitled to an order declaring that

2 Defendants violated TILA, 15 U.S.C. §1601, et seq., that Plaintiffs and the Class have the right to

3 rescind pursuant to 15 U.S.C. § 1635 and 12 C.F.R. § 226.23, damages pursuant to 15 U.S.C. § 1640,

4 attorneys fees, litigation costs and expenses and costs of suit, and for an order rescinding Plaintiff's

5 individual mortgage and those of any class member desirous of such relief, and for an order awarding

6 other relief as the Court deems just and proper.

7

8                                      **VI.**

9                         **SECOND CAUSE OF ACTION**

10   **Violation of California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et. seq.* - "Unlawful"**

11                **Business Acts or Practices Predicated on Violations of TILA**

12                            **(Against All Defendants)**

13   102.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

14   103.    Plaintiff brings this cause of action on behalf of herself, on behalf of the Class, and in her

15 capacity as a private attorney general against Defendant for its unlawful business acts and/or practices

16 pursuant to California Business and Professions Code Sections 17200 *et seq.*, which prohibits all

17 unlawful business acts and/or practices.

18   104.    Plaintiff asserts these claims as she is a representative of an aggrieved group and as a

19 private attorney general on behalf of the general public and other persons who have expended funds that

20 the Defendant should be required to pay or reimburse under the equitable and restitutionary remedies

21 provided by California Business and Professions Code Sections 17200 *et seq.*

22   105.    The unlawful acts and practices of Defendant alleged above constitute unlawful business

23 acts and/or practices within the meaning of California Business and Professions Code Sections 17200 et

24 seq.

25   106.    By engaging in the above-described acts and practices, Defendant has committed one or

26 more acts of unfair competition within the meaning of Business and Professions Code Sections 17200, *et*

27 *seq.*

28 ///

1    107.   Defendant's unlawful business acts and/or practice as alleged herein have violated

2    numerous laws and/or regulations and said predicate acts are therefore *per se* violations of §17200, *et*

3    *seq*. These predicate unlawful business acts and/or practices include Defendant failure to comply with

4    the disclosure requirements mandated by TILA, 15 U.S.C. §1601, *et seq.*, Regulation Z and Official

5    Staff Commentary issued by the Federal Reserve Board. And, as described in more detail above,

6    Defendant also failed in a number of ways to clearly or accurately disclose the terms of the ARM loans

7    to Plaintiff and the Class members as required under TILA.

8    108.   Defendant's misconduct, as alleged herein, gave Defendant an unfair competitive

9    advantage over their competitors.

10    109.   As a direct and proximate result of the aforementioned acts, Defendant received monies

11    and continues to hold the monies expended by Plaintiff and others similarly situated who purchased the

12    ARM loans as described herein.

13    110.   In addition to the relief requested in the Prayer below, Plaintiff seeks the imposition of a

14    constructive trust over, and restitution of, the monies collected and realized by Defendant.

15    111.   The unlawful acts and practices, as fully described herein, present a continuing threat to

16    members of the public to be mislead and/or deceived by Defendant as described herein. Plaintiff and

17    other members of the general public have no other remedy of law that will prevent Defendant's

18    misconduct, as alleged herein, from occurring and/or reoccurring in the future.

19    112.   As a direct and proximate result of Defendant's unlawful conduct alleged herein, Plaintiff

20    and Class Members have lost thousands if not millions of dollars of equity in their homes. Plaintiff and

21    the Class members are direct victims of the Defendant's unlawful conduct, as herein alleged, and each

22    has suffered injury in fact, and have lost money or property as a result of Defendant's unfair competition.

23    113.   WHEREFORE, Plaintiff and members of the Class are entitled to equitable relief,

24    including restitution, restitutionary disgorgement of all profits accruing to Defendant because of its

25    unlawful and deceptive acts and practices, attorneys fees and costs, declaratory relief, and a permanent

26    injunction enjoining Defendant from their unlawful activity.

27    ///

28    ///

# VII.

## THIRD CAUSE OF ACTION

### FRAUDULENT OMISSIONS

#### (Against All Defendants)

114.  Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

115.  As alleged herein, pursuant to TILA, 15 U.S.C. §1601, *et seq.*,  Regulation Z (12 C.F.R. §226 ) and the Federal Reserve Board's Official Staff Commentary, Defendant had a duty to disclose to Plaintiff, and each Class member, (i) the actual interest rate being charged on the Note(s), (ii) that negative amortization would occur and that the "principle balance *will* increase"; and (iii) that the initial interest rate on the note was discounted.

116.  Defendant further had a duty to disclose to Plaintiff, and each Class member (i) the actual interest rate being charged on the Note(s), (ii) that negative amortization would occur and that the "principle balance *will* increase"; and (iii) that the initial interest rate on the note was discounted, based upon Defendant partial representations of material facts when Defendant had exclusive knowledge of material facts that negative amortization was certain to occur.

117.  The Note(s) state at ¶ 3 (A) "Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principle."  However, the true facts are that the payment rate provided by Defendant was insufficient to pay both interest and principle.  In fact, the payment rate was not even sufficient to pay enough interest to avoid negative amortization which, under the terms of the Note(s) was certain to occur.

118.  The Note(s) further state, at ¶ 3(C) "If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur."  However, the payment schedule provided by Defendant in the TILD were absolutely incapable of covering the amount of interest due and therefore statement was false in that it omitted this material fact.

119.  The Note(s) state an interest rate and an initial payment amount based on that interest rate.  The TILDS Defendant gave to Plaintiff and the Class members include the schedule of payments (including that initial payment rate) but yet disclose a different interest rate.  The payment schedule, however, is wholly unrelated to the true interest rate being charged on the loan and, at all times relevant

1  during the liability period, Defendant failed to disclose, and by omission, failed to inform Plaintiff and

2  the Class members of this important material information.

3      120.   The aforementioned omitted information was not known to Plaintiff and the Class

4  members and which, at all times relevant, Defendant failed to disclose and/or actively concealed by

5  making such statements and partial, misleading representations to Plaintiff and all others similarly

6  situated. Because the Option ARM loans did not provide a low interest rate for the first three (3) to five

7  (5) years of the Note, and the payment rate disclosed by Defendant was insufficient to pay both principle

8  and interest, negative amortization occurred.

9      123.   Defendant, and each of them, failed to disclose, and by omission failed to inform Plaintiff

10  and each Class member that (i) the payment rate provided to Plaintiff and the Class members on the

11  TILD was insufficient to pay both principle and interest; (ii) that negative amortization was absolutely

12  certain to occur if Plaintiff and the Class members made payments according to the payment schedule

13  provided by Defendant; and (iii) that loss of equity and/or loss of Plaintiff's and the Class members

14  residence was substantially certain to occur if Plaintiff and the Class members made payments according

15  to the payment schedule provided by Defendant.

16      124.   As alleged herein, Defendant had a duty to disclose to Plaintiff, and each Class member

17  and at all times relevant, failed to disclose and/or concealed material facts by making partial

18  representations of some material facts when Defendant had exclusive knowledge of material facts,

19  including but not limited to, (i) the disclosed interest was not the actual interest rate charged on the

20  Note(s), (ii) that negative amortization was certain to occur, and (iii) that the initial rate was discounted.

21  The concealed and omitted information was not known to Plaintiff and the Class members and which, at

22  all times relevant, Defendant failed to disclose and/or actively concealed by making such statements and

23  partial, misleading representations to Plaintiff and all others similarly situated. Because the Option

24  ARM loans did not provide a low interest rate for the first three (3) to five (5) years of the Note, and the

25  payment rate disclosed by Defendant was insufficient to pay both principle and interest, negative

26  amortization occurred.

27      125.   From the inception of Option ARM loan scheme, until the present, Defendant has

28  engaged in a purposeful and fraudulent scheme to omit material facts known solely to them, and not

1    reasonably discoverable by Plaintiff and the Class members, regarding the true facts concerning the

2    actual interest rate charged on the loans, the negative amortization that was certain to occur, and that the

3    initial interest rate, in fact, was discounted, all of which Defendant were duty bound to clearly and

4    conspicuously disclose to Plaintiff and the Class members in the TILDS.

5         126.    Defendant has known from the inception of their Option ARM loan scheme that these

6    loans, (i) do not provide the promised initial interest rate for the first three (3) to five (5) years of the

7    Note, (ii) that negative amortization would occur and that Plaintiff's and the Class members' principle

8    balances would increase, and (iii) that the initial interest rate was discounted and did not accurately

9    reflect the interest that consumers were being charged on the loans.

10        127.    Defendant purposefully and intentionally devised this Option ARM loan scheme to

11    defraud and/or mislead consumers into believing that these loans would provide a low-interest rate loan,

12    for the first three to five years of the note and that if they made their payments according to the payment

13    schedule provided by Defendant that it would be sufficient to pay both principle and interest.

14        128.    The omitted information, as alleged herein, was material to Plaintiff and each Class

15    member in that had the information be disclosed, Plaintiff and each Class member would not have

16    entered into the loans.

17        129.    As a direct and proximate result of Defendant failures to disclose and omission of

18    material facts, as alleged herein, Plaintiff and each Class member has suffered damages, which include,

19    but are not limited to the loss of equity Plaintiff and each Class member had in their homes prior to

20    entering these loans.

21        130.    The wrongful conduct of Defendant, as alleged herein, was willful, oppressive, immoral,

22    unethical, unscrupulous, substantially injurious, malicious and in conscious disregard for the well being

23    of Plaintiff, and others similarly situated.  Accordingly, Plaintiff, and the others similarly situated seek

24    punitive damages against Defendant in an amount to deter Defendant from similar conduct in the future.

25        131.    WHEREFORE, Plaintiff and members of the Class are entitled to all legal and equitable

26    remedies provided by law, including but not limited to actual damages, exemplary damages,

27    prejudgment interest and costs.

28    / / /

CLASS ACTION COMPLAINT

# VIII.

# **FOURTH CAUSE OF ACTION**

**(Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200 *et seq*., "Unfair"**

**and "Fraudulent" Business Acts or Practices,**

**(Against All Defendants)**

132.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

133.    Plaintiff brings this cause of action on behalf of herself, on behalf of the Class, and in her capacity as a private attorney general against all Defendants for their unfair, fraudulent and/or deceptive business acts and/or practices pursuant to California Business and Professions Code Sections 17200 et seq., which prohibits all unfair and/or fraudulent business acts and/or practices.

134.    Plaintiff asserts these claims as she is a representative of an aggrieved group and as private attorney general on behalf of the general public and other persons who have expended funds that the Defendant should be required to pay or reimburse under the equitable and restitutionary remedies provided by California Business and Professions Code Sections 17200 et seq.

135.    The instant claim is predicated on the generally applicable duty of any contracting party to not misrepresent material facts, and on the duty to refrain from unfair and deceptive business practices. The Plaintiff and the Class members hereby seek to enforce a general proscription of unfair business practices and the requirement to refrain from deceptive conduct. The instant claim is predicated on duties that govern anyone engaged in any business and anyone contracting with anyone else.

136.    At all times relevant during the liability period, Defendant engaged in a pattern of deceptive conduct and concealment aimed at maximizing the number of borrowers who would accept their Option ARM loan. Defendants, and each of them, marketed and sold to Plaintiff and the Class members a deceptively devised financial product. Defendant marketed and sold their Option ARM loan product to consumers, including Plaintiff, in a false or deceptive manner. Defendant sold a loan which appeared to have a very low, fixed payment and interest rate for a period of three (3) to five (5) years and no negative amortization. However, at all times relevant during the liability period, Defendant failed to disclose, and by omission, failed to inform Plaintiff and the Class members the true fact that Defendant's

1  Option ARM loan was designed to, and did, cause negative amortization to occur.

2       137.    Defendant lured Plaintiff and the Class members into the Option ARM loan with

3  promises of low payment and low interest. Once Plaintiff and the Class members entered into these

4  loans, Defendant switched the interest rate charged on the loans to a much higher rate than the one they

5  advertised and promised to Plaintiff and the Class members. After entering these loans, Class members

6  could not escape because Defendant purposefully placed into these loans an extremely onerous

7  prepayment penalty that made it prohibitively expensive for consumers to extricate themselves from

8  these loans. Thus, once on the hook, consumers could not escape from Defendant loans.

9       138.    Plaintiff and the Class members were consumers who applied for a mortgage loan

10  through Defendant. During the loan application process, in each case, Defendant uniformly promoted,

11  advertised, and informed Plaintiff and Class members that in accepting these loan terms, Plaintiff and

12  Class members would be able to lower their mortgage payment and save money.

13       139.    Defendant promoted their Option ARM loan product as having a low payment and

14  interest rate, i.e., typically between 1% and 3%. However, Defendant did not disclose that this was just a

15  "teaser" rate, the purpose of which was to get consumers to enter into loan agreements with Defendant.

16  Defendant did not disclose to Plaintiff and the Class members that the "teaser" rate was not the fixed rate

17  that Defendant would actually charge Plaintiff and the Class members on their outstanding loan balances

18  after the first thirty days. Nor did Defendant disclose that the corresponding payment schedule was not

19  the true payment required, but was rather only a partial payment of the interest accruing on the loans.

20       140.    Based on the Defendant's representations and misconduct as alleged herein, Plaintiff and

21  the Class members agreed to finance their primary residence through Defendant's Option ARM loan

22  product. Plaintiff and the Class members were told they were being sold a home loan with a low

23  payment and interest rate. Plaintiff and the Class members were also led to believe that if they made

24  payments based on this interest rate, and the payment schedule provided to them by Defendant, the loan

25  would be a no negative amortization home loan. After, the fixed interest period, the loan documetns

26  stated that the interest rate "may" change. Plaintiff and the Class members believed these facts to be true

27  because that is what the Defendant wanted consumers to believe.

28  ///

141.    Defendant aggressively sold their product as a fixed low interest home loan.  Defendant knew that if marketed and sold in such a manner, their Option ARM loan product would be a hugely popular and profitable product for them.  Defendant also knew, however, that they were marketing their product in a false and deceptive manner.  While Defendant trumpeted their low payment loans with a "teaser" rate to the public, Defendant knew, however, that this was not entirely true.

142.    In fact, Defendant's Option ARM loan possessed a low, fixed *payment* but not a low interest rate.  Unbeknownst to Plaintiff and Class members, the actual interest rate they were charged on their loans was not fixed.  After purchasing Defendant's Option ARM loan product, Plaintiff and class members never actually received the benefit of the low advertised interest rate, or, in some cases, consumers received the low rate for just a single month.  Immediately, thereafter, Defendant in every instance and for every loan increased the interest rate they charged Plaintiff and the Class members.  Once Plaintiff and the Class members accepted Defendant's Option ARM loan, they had no viable option to extricate themselves because the loans contracts included a draconian pre-payment penalty.

143.    Defendant perpetrated this bait and switch scheme on Plaintiff and Class members in a common and uniform manner.  Defendant's misconduct and failures to disclose the truth about the actual interest rate charged on the loans and describing the loans as having a low payment that corresponded to a listed "teaser" rate was, at all times relevant, deceptive and unfair.  Defendant initiated this scheme in order to maximize the amount of the loans issued to consumers and to maximize Defendant's profits.

144.    The acts, misrepresentations, omissions, and practices of Defendant alleged above constitute unfair, and/or fraudulent business acts and/or practices within the meaning of California Business and Professions Code Sections 17200 et seq.

145.    By engaging in the above-described acts and practices, Defendant has committed one or more acts of unfair competition within the meaning of Business and Professions Code Sections 17200, et seq.

146.    Defendant's conduct, as alleged herein, was likely to deceive members of the consuming public, and at all times relevant during the liability period, Defendant's failures to disclose and omission of material facts have been and continue to be unfair, fraudulent, untrue and/or deceptive.

/ / /

-33-

147.    Defendant's misconduct as alleged herein gave Defendant an unfair competitive advantage over their competitors.

148.    As a direct and proximate result of the aforementioned acts, Defendant, and each of them, received monies and continues to hold the monies expended by Plaintiff and others similarly situated who purchased the Option ARM loans as described herein.

149.    In addition to the relief requested in the Prayer below, Plaintiff seeks the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendant.

150.    The harm to Plaintiff, members of the general public and others similarly situated outweighs the utility of Defendant's policies, acts and/or practices and, consequently Defendant's conduct herein constitutes an unlawful business act or practice within the meaning of California Business & Professions Code Sections 17200 et seq.

151.    The unfair, deceptive and/or fraudulent business practices of Defendant, as alleged herein, presents a continuing threat to members of the public to be mislead and/or deceived by Defendant's Option ARM loans as described herein.  Plaintiff and other members of the general public have no other remedy of law that will prevent Defendant misconduct as alleged herein from occurring and/or reoccurring in the future.

152.    As a direct and proximate result of Defendant's unfair and/or fraudulent conduct alleged herein, Plaintiff and Class Members have lost thousands if not millions of dollars of equity in their homes.  Plaintiff and Class members are direct victims of the Defendant's unlawful conduct, and each has suffered injury in fact, and have lost money or property as a result of Defendant's unfair competition.

153.    WHEREFORE, Plaintiff and members of the Classes are entitled to equitable relief, including restitution, restitutionary disgorgement of all profits accruing to Defendant because of their unfair, fraudulent, and deceptive acts and/or practices, attorneys fees and costs, declaratory relief, and a permanent injunction enjoining Defendant from their unfair, fraudulent and deceitful activity.

/ / /

/ / /

/ / /

# IX.

## **FIFTH CAUSE OF ACTION**

### Breach of Contract

### (Against All Defendants)

154. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

155. Plaintiff and Class members entered into a written home loan agreement – the contract or Note – with Defendant. The Note was drafted by Defendant and could not be modified by Plaintiff or the Class members. The Note describes terms and respective obligations applicable to the parties herein.

156. The Note states the interest rate on the loan at 1% to 3% and indicates that it "may" change. The payment schedule in the TILDS, for the first three (3) to five (5) years of the Note, are based on that low 1% to 3% "teaser" interest rate.

157. Defendant drafted the Note and did not allow Plaintiff or the Class members any opportunity to make changes to the Note and due to Defendant's superior bargaining position, the Note was offered on a take it or leave it basis. As such, the Notes at issue are contracts of adhesion.

158. Defendant expressly and/or through their conduct and actions agreed that Plaintiff's and the Class members' monthly payment obligations would be sufficient to pay both the principal and interest owed on the loans.

159. At all times relevant during the liability period, Defendant breached this agreement and never applied any of Plaintiff's and the Class members' payments to principal.

160. The written payment schedules prepared by Defendant, and applicable to Plaintiff's and Class members' loans, show that the payment amounts owed by Plaintiff and Class members to Defendant in year one are exactly equal to the amount required to pay off the loan if, indeed, the interest actually charged on the loan was the low interest rate promised. If the Defendant did as promised, the payments would have been sufficient to pay both principal and interest amounts.

161. Instead, Defendant immediately raised Plaintiff's and Class members' interest rates and applied *no part* of Plaintiff's and Class members' payments were applied to the principal balances on their loans. In fact, because Defendant charged more interest than was agreed to and payments, as disclosed by Defendant, were, at all times relevant, insufficient to cover the interest charge and thus

-35-

1  principal balances increased (which is the negative amortization built into the loan).

2    162.    Defendant breached the written contractual agreement by failing to apply any portion of

3  Plaintiff's and the Class members' monthly payments towards their principal loan balances.

4    163.    Plaintiff and the Class members, on the other hand, did all of those things the contract

5  required of them.  Plaintiff and the Class members made monthly payments in the amount required by

6  the terms of the Note and reflected in the payment schedule prepared by Defendant.

7    164.    As a result of Defendant's breach of the agreement, Plaintiff and the Class members have

8  suffered harm.  Plaintiff and Class members have incurred additional charges to their principal loan

9  balance.  Plaintiff and Class members have incurred and will continue to incur additional interest

10  charges on the principal loan balance and surplus interest added to Plaintiff's and Class members'

11  principal loan balance.  Furthermore, Defendant's breach has placed Plaintiff and Class members in

12  danger of losing their homes through foreclosure, as Defendant has caused Plaintiff's and Class

13  members' principal loan balances to increase and limited these consumers' ability to make their future

14  house payments or obtain alternative home loan financing.

15    165.    At all times relevant, there existed a gross inequality of bargaining power between the

16  parties to the ARM loan contracts.  At all times relevant, Defendant unreasonably and unconscionably

17  exploited their superior bargaining position and foisted upon Plaintiff and the Class members extremely

18  harsh, one-sided provisions in the loan contract, which Plaintiff and Class members were not made

19  aware of and did not comprehend (*e.g.*, Defendant fraud and failures to clearly and conspicuously

20  disclose as alleged herein), and which attempt to severely limit Defendant's obligations under these loan

21  contracts at the expense of Plaintiff and Class members, as alleged herein.  As a direct and proximate

22  result of these extremely harsh, one-sided provisions, including but not limited to the provisions which

23  seek to limit the "teaser" interest rate for one month or less, these provisions are unconscionable and

24  therefore unenforceable.

25    166.    WHEREFORE, Plaintiff and members of the Classes are entitled to declaratory relief,

26  compensatory damages proximately caused by Defendant breach of contract as alleged herein, pre-

27  judgment interest, costs of suit and other relief as the Court deems just and proper.

28

## X.

## SIXTH CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing

### (Against All Defendants)

167.   Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

168.   Defendant entered into written contracts with Plaintiff and Class members based on representations Defendant made directly and indirectly to Plaintiff and the Class members about the terms of their loans.

169.   Defendant expressly and impliedly represented to Plaintiff and the Class members that they would provide loans secured by Plaintiff's and Class members' homes, and that the loans would have a fixed interest rate at promised low interest rate for a period of three (3) to five (5) years.

170.   Defendant also represented that if Plaintiff and the Class members made the monthly payments in the amount prescribed by Defendant that no negative amortization would occur. The Note expressly states and/or implies that Plaintiff's and Class members' monthly payment obligation **will** be applied to pay both principal and interest owed on the loan. The Note further states that for each monthly payment Plaintiff and the Class members interest shall be paid before principal.

171.   The written payment schedules prepared by Defendant, and applicable to Plaintiff's and Class members' loans, show that the payment amounts owed by Plaintiff and Class members to Defendant in year one are exactly equal to the amount required to pay off the loan if, indeed, the interest actually charged on the loan was the low interest rate promised. If the Defendant acted as it promised, the payments would have been sufficient to pay both principal and interest.

172.   Instead, Defendant immediately raised Plaintiff's and Class members' interest rate and applied *no part* of Plaintiff's and Class members' payment to principal. In fact, because Defendant charged more interest than was disclosed and agreed to in the loan contracts, Plaintiff and the Class members' payments were insufficient to cover the interest that Defendant charged resulting in an increase in the amount of principal Plaintiff and the Class members owed on their homes.

173.   Defendant unfairly interfered with Plaintiff's and Class members' rights to receive the benefits of the contract. These loans will cost Plaintiff and Class members thousands of dollars more

1   than represented by Defendant.  Plaintiff and Class members did not receive the fixed low interest rate

2   home loan promised them by Defendant.  Defendant has caused Plaintiff and Class members to lose

3   equity in their homes and therefore have denied Plaintiff and Class members the enjoyment, security of

4   one of their most important investments.

5   174.   Plaintiff and the Class members, on the other hand, did all of those things the contract

6   required of them.  Plaintiff and the Class members made monthly payments in the amount required by

7   the terms of the Note and reflected in the payment schedule prepared by Defendant.

8   175.   At all times relevant, Defendant unreasonably denied Plaintiff and members of the Class

9   the benefits promised to them under the terms of the Note, including but not limited to: (i) the promised

10   low interest rate for the first three (3) to five (5) years of the loan as reflected in the payment schedule,

11   (ii) payments to both principle and interest during the first three (3) to five (5) years of the loan; and (iii)

12   secretly added negative amortization to the principle balance, and charged interest on that unpaid

13   interest.

14   176.   Knowing the truth and motivated by profit and market share, Defendant has knowingly

15   and willfully breached the implied covenant of good faith and fair dealing by engaging in the acts and/or

16   omissions to mislead and/or deceive Plaintiff and others similarly situated as alleged herein.

17   177.   Defendant's breaches, as alleged herein, were committed with willful and wanton

18   disregard for whether or not Plaintiff or others similarly situated would actually receive a home loan that

19   would provide the promised low interest and payment rate for the first three (3) to five (5) years of the

20   loan sufficient to pay both principle and interest.

21   178.   Upon information and belief, and at all times relevant during the liability period,

22   Defendant possessed full knowledge and information concerning the above facts about the Option ARM

23   loans, and otherwise marketed and sold these loans throughout the United States, including the State of

24   California.

25   179.   Defendant's placing of their corporate and/or individual profits over the rights of others is

26   particularly vile, base, contemptible, and wretched and said acts and/or omissions were performed on the

27   part of officers, directors, and/or managing agents of each corporate Defendant and/or taken with the

28   advance knowledge of the officers, directors, and/or managing agents who authorized and/or ratified said

-38-

1   acts and/or omissions. Defendant thereby acted with malice and complete indifference to and/or

2   conscious disregard for the rights and safety of others, including Plaintiff and the General Public.

3       180.   At all times relevant during the liability period, Defendant's conduct, as alleged herein,

4   was malicious, oppressive, and/or fraudulent.

5       181.   As a direct and proximate result of Defendant's misconduct, as alleged herein, Plaintiff

6   and the Class members have suffered harm. Plaintiff and the Class members have incurred additional

7   charges to their principal loan balances. Plaintiff and the Class members have incurred and will continue

8   to incur additional interest charges on their principal loan balances which Defendant has secretly added

9   to their principal loan balances. Furthermore, Defendant's breach has caused and/or otherwise placed

10  Plaintiff and the Class members in danger of losing their homes through foreclosure and, as a direct and

11  proximate result of said misconduct, caused Plaintiff's and the Class members' principal loan balances

12  to increase limiting these consumers' ability to make their future house payments or obtain alternative

13  home loan financing.

14      182.   WHEREFORE, Plaintiff and members of the Classes are entitled to declaratory relief, all

15  damages proximately caused by Defendant breach of the implied covenant of good faith and fair dealing

16  as alleged herein, punitive damages, pre-judgment interest, costs of suit and other relief as the Court

17  deems just and proper.

18

19                                    **XI.**

20                          **SEVENTH CAUSE OF ACTION**

21   **Violation of California's Unfair Competition Law, Bus. & Prof. Code §17200, *et seq.*, –**

22                 **"Unlawful" Business Acts or Practices Predicated on**

23                     **Violations of Cal. Financial Code § 22302**

24                            **(Against All Defendants)**

25      183.   Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

26      184.   Plaintiff brings this cause of action on behalf of herself, on behalf of the Class, and in her

27  capacity as a private attorney general against all Defendant for their unlawful business acts and/or

28  practices pursuant to California Business and Professions Code Sections 17200 *et seq.*, which prohibits

1   all unlawful business acts and/or practices.

2      185.   Plaintiff asserts these claims as she is a representative of an aggrieved group and as a

3   private attorney general on behalf of the general public and other persons who have expended funds that

4   the Defendant should be required to pay or reimburse under the equitable and restitutionary remedies

5   provided by California Business and Professions Code Sections 17200 *et seq.*

6      186.   The unlawful acts and practices of Defendant alleged above constitute unlawful business

7   acts and/or practices within the meaning of California Business and Professions Code Sections 17200 et

8   seq.

9      187.   By engaging in the above-described acts and practices, Defendant has committed one or

10   more acts of unfair competition within the meaning of Business and Professions Code Sections 17200, et

11   seq.

12      188.   Defendant's unlawful business acts and/or practice as alleged herein have violated

13   numerous laws and/or regulations and said predicate acts are therefore *per se* violations of §17200, *et*

14   *seq.* These predicate unlawful business acts and/or practices include Defendant violation of California

15   Financial Code § 22302.

16      189.   California Financial Code § 22302 applies to consumer loan contracts. It states that a

17   loan found to be unconscionable pursuant to Section 1670.5 of the California Civil Code shall be

18   deemed to be a violation of Financial Code § 22302.

19      190.   The loan contracts prepared by Defendant and entered into between Plaintiff and the

20   Class members and Defendant were, and are, unconscionable pursuant to Section 1670.5 of the Civil

21   Code.

22      191.   The relative bargaining position between Plaintiff and the Class members and Defendant

23   was unequal. Plaintiff and the Class members could not negotiate or change any of the particular terms

24   related to the loan contracts drafted by Defendant. To secure the loans Plaintiff and the Class members

25   were given no choice but to make the payments as stated in the payment schedule and to accept and sign

26   all the associating documents numbering over a hundred pages.

27      192.   The period of time in which Defendant actually provided the promised low interest rate

28   was for only one month. Because Defendant packaged the documents in such a manner as to lead

CLASS ACTION COMPLAINT

1    Plaintiff and the Class members to believe that they had a low interest rate loan for the first three (3) to

2    five (5) years of the Note, and therefore low payments for three to five years, this resulted in Plaintiff

3    and the Class members owing significantly more on their homes than before they entered into these loan

4    contracts.

5        193.    Defendant drafted these loan documents for use on tens of thousands of individuals in a

6    common and uniform manner. The loan process was such that individual terms could not be modified.

7    The documents evidencing the loan were delivered to Plaintiff and the Class members at the time of

8    signature. The loan process offered by Defendant did not permit for any meaningful negotiation of terms

9    or even allow sufficient time to conduct an adequate review of the loan documents at the time of

10    execution. And, even when sufficient time was allowed, the documents contained inconsistent and

11    conflicting information, as alleged herein, which therefore made it difficult, if not impossible, for

12    consumers to decipher what legal obligations the loans would entail.

13        194.    In furtherance of their scheme, Defendant inserted into the loan contracts a prepayment

14    penalty provision that has, as it sole purpose, to cause Plaintiff and the Class members to continue under

15    the terms of this loans or lose thousands of dollars if Plaintiff try to refinance the loans.

16        195.    The loans, as drafted and presented by Defendant, were so "one-sided" that they could

17    only lead Plaintiff and the Class members to one result, which was a significant loss of money. As a

18    direct and proximate result of Defendant's unconscionable conduct, as alleged herein, Plaintiff and the

19    Class members have suffered direct and actual injury.

20        196.    Because Defendant's Option ARM loan contract is unconscionable pursuant to Section

21    1670.5 of the Civil Code, Defendant's Option ARM loan violates Financial Code § 22302 and

22    constitutes a violation of the UCL.

23        197.    As a direct and proximate result of the aforementioned acts, Defendant, and each of them,

24    received monies and continues to hold the monies expended by Plaintiff and others similarly situated

25    who purchased the ARM loans as described herein.

26        198.    In addition to the relief requested in the Prayer below, Plaintiff seeks the imposition of a

27    constructive trust over, and restitution of, the monies collected and realized by Defendant.

28        199.    The unlawful acts and practices, as fully described herein, present a continuing threat to

1    members of the public to be mislead and/or deceived by Defendant as described herein.  Plaintiff and

2    other members of the general public have no other remedy of law that will prevent Defendant's

3    misconduct, as alleged herein, from occurring and/or reoccurring in the future.

4        200.    As a direct and proximate result of Defendant's unlawful conduct alleged herein, Plaintiff

5    and the Class Members have lost thousands if not millions of dollars of equity in their homes.  Plaintiff

6    and the Class members are direct victims of the Defendant's unlawful conduct, as herein alleged, and

7    each has suffered injury in fact, and have lost money or property as a result of Defendant's unfair

8    competition.

9        201.    WHEREFORE, Plaintiff and members of the Class are entitled to equitable relief,

10    including restitution, restitutionary disgorgement of all profits accruing to Defendant because of their

11    unlawful, unfair and fraudulent, and deceptive practices, attorneys fees and costs, declaratory relief, and

12    a permanent injunction enjoining Defendant from their unlawful activity.

13

14                              **PRAYER FOR RELIEF**

15        WHEREFORE, Plaintiff and all Class members pray for judgment against each Defendant,

16    jointly and severally, as follows:

17        A.    An order certifying this case as a class action and appointing Plaintiff and their counsel to

18              represent the Class;

19        B.    For actual damages according to proof;

20        C.    For compensatory damages as permitted by law;

21        D.    For consequential damages as permitted by law;

22        E.    For statutory damages as permitted by law;

23        F.    For punitive damages as permitted by law;

24        G.    For rescission;

25        H.    For equitable relief, including restitution;

26        I.    For restitutionary disgorgement of all profits Defendant obtained as a result of their unfair

27              competition;

28        J.    For interest as permitted by law;

1      K.     For Declaratory Relief;

2      L.     For a mandatory injunction requiring Defendant to permanently include in every Option

3                 ARM loan and disclosure statement: (i) clear and conspicuous disclosure of the actual

4                 interest rate on the Note(s) and disclosure statement(s) as required under 12 C.F.R. §

5                 226.17 by; (ii) clear and conspicuous disclosure in the Note(s) and the disclosure

6                 statement(s) that payments on the variable interest rate loan during the initial period at the

7                 teaser rate will result in negative amortization and that the principal balance will increase

8                 as required under 12 C.F.R. § 226.19; and (iii) clear and conspicuous disclosure that the

9                 initial interest rate provided is discounted and does not reflect the actual interest that

10                Plaintiff and Class members would be paying on the Note(s).

11     M.     For reasonable attorneys' fees and costs; and

12     N.     For such other relief as is just and proper.

13  DATED: January 1*, 2008             MARCUS J. JACKSON, Attorney at Law

14

15                            By: _____
                          Marcus J. Jackson

16                            751 Center Dr., Suite 108-456
                          San Marcos, CA 92069

17                            David M. Arbogast, Esq.

18                            SPIRO MOSS BARNESS LLP
                          11377 W. Olympic Boulevard, Fifth Floor

19                            San Diego, CA 90064-1683
                          Phone: (310) 235-2468

20                            Fax:  (310) 235-2456

21                            Jeffrey K. Berns, Esq.
                          LAW OFFICES OF JEFFREY K. BERNS

22                            19510 Ventura Blvd, Suite 200
                          Tarzana, California 91356

23                            Phone: (818) 961-2000
                          Fax:  (818) 867-4820

24                            Paul R. Kiesel, Esq.
                          Patrick Deblase, Esq.

25                            Michael C. Eyerly, Esq.
                          KIESEL BOUCHER LARSON LLP

26                            8648 Wilshire Boulevard
                          Beverly Hills, California 90210

27                            Phone: (310) 854-4444
                          Fax:  (310) 854-0812

28

CLASS ACTION COMPLAINT

Jonathan Shub, Esq.
SEEGER WEISS LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19107
Phone: (215) 564-2300
Fax (215) 851-8029

Attorneys for Plaintiff, FRANCENA D. PENCE, and
all others Similarly Situated

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury to the full extent permitted by law.

DATED: January /7, 2008

MARCUS J. JACKSON, Attorney at Law

By: _____
Marcus J. Jackson
751 Center Dr., Suite 108-456
San Marcos, CA 92069

David M. Arbogast, Esq.
SPIRO MOSS BARNESS LLP
11377 W. Olympic Boulevard, Fifth Floor
San Diego, CA 90064-1683
Phone: (310) 235-2468
Fax: (310) 235-2456

Jeffrey K. Berns, Esq.
LAW OFFICES OF JEFFREY K. BERNS
19510 Ventura Blvd, Suite 200
Tarzana, California 91356
Phone: (818) 961-2000
Fax: (818) 867-4820

Paul R. Kiesel, Esq.
Patrick Deblase, Esq.
Michael C. Eyerly, Esq.
KIESEL BOUCHER LARSON LLP
8648 Wilshire Boulevard
Beverly Hills, California 90210
Phone: (310) 854-4444
Fax: (310) 854-0812

Jonathan Shub, Esq.
SEEGER WEISS LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19107
Phone: (215) 564-2300
Fax (215) 851-8029

Attorneys for Plaintiff, FRANCENA D. PENCE, and
all others Similarly Situated

-44-

# Exhibit No. 1

MIN: 100453300506014426                    Loan Number: 0050601442

## ADJUSTABLE RATE NOTE
### (MTA-Twelve Month Average Index - Payment Caps)

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.

MARCH 12, 2007                LA JOLLA                  CALIFORNIA
[Date]                        [City]                    [State]

392 CANAL COURT, FARMERSVILLE, CALIFORNIA 93223
[Property Address]

1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $198,000.00     (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed (ONE HUNDRED FIFTEEN PERCENT     ) of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is UNION FIDELITY MORTGAGE, INC., A CALIFORNIA CORPORATION (CFL # .603 A945)
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. INTEREST

(A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  3.500 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

(B) Interest Rate Change Dates

The interest rate I will pay may change on the        1st      day of MAY, 2007     , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

(C) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(D) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding FOUR AND 575/1000      percentage point(s)  4.575 % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than  9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

3. PAYMENTS

(A) Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the       1st        day of each month beginning on MAY 1, 2007    . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on APRIL 1, 2047      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 7979 IVANHOE AVENUE, LA JOLLA, CALIFORNIA 92037
or at a different place if required by the Note Holder.

Borrower Initials: _____   _____   _____   _____
PayOption ARM Note - MTA Index
FE-5312 (0511)                        Page 1 of 6

00001

**(B)  Amount of My Initial Monthly Payments**
Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S.
$ 767.03          unless adjusted under Section 3 (F).

**(C)  Payment Change Dates**
My monthly payment may change as required by Section 3(D) below beginning on the  1st
day of  MAY,  2008          , and on that day every 12th month thereafter. Each
of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F)
or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount
the Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as
provided in Section 3(F) or 3(G) below.  If the Minimum Payment is not sufficient to cover the amount of the
interest due then negative amortization will occur.
I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or
as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Monthly Payment Changes**
At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the
monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment
Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the
month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless
Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will
not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap."
This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments
Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the
amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the
number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below
requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and
the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E)  Additions to My Unpaid Principal**
Since my monthly payment amount changes less frequently than the interest rate, and since the monthly
payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less
than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay
the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal
payments. For each month that my monthly payment is less than the interest portion, the Note Holder will
subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to
my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by
Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will
apply the payment as provided in Section 3 (A).

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**
My unpaid Principal can never exceed the Maximum Limit equal to 115.000  percent of the Principal
amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments
and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to
exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change
more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new
Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the
Maturity Date in substantially equal payments at the current interest rate.

**(G)  Required Full Payment**
On the   5th         Payment Change Date and on each succeeding fifth Payment Change Date
thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes
again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H)  Payment Options**
After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment
options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the
following Payment Options:
>    (i)  Interest Only Payment:  the amount that would pay the interest portion of the monthly payment
>    at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is
>    only available if the interest portion exceeds the Minimum Payment.
>    (ii)  Fully Amortized Payment:  the amount necessary to pay the loan off (Principal and Interest) at
>    the Maturity Date in substantially equal payments.
>    (iii)  15 Year Amortized Payment:  the amount necessary to pay the loan off (Principal and Interest)
>    within a fifteen (15) year term from the first payment due date in substantially equal payments. This
>    monthly payment amount is calculated on the assumption that the current rate will remain in effect for
>    the remaining term.
These Payment Options are only applicable if they are greater than the Minimum Payment.

Borrower Initials: _____   _____   _____   _____   _____

PayOption ARM Note · MTA Index
FE-5312 (0511)                          Page 2 of 4

**4. NOTICE OF CHANGES**
The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY ** See attached Prepayment Note Addendum.**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.
I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A)  Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)  Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8.  GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

Borrower Initials: _____   _____   _____   _____   _____   _____

PayOption ARM Note - MTA Index
FE-5312 (0511)                    Page 3 of 4

**00003**

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

_____ (Seal)
FRANCENA D. PENCE                                          -Borrower

_____ (Seal)
                                                                          -Borrower

_____ (Seal)
                                                                          -Borrower

_____ (Seal)
                                                                          -Borrower

00004

# FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

Loan Number: 0050601442      Date: MARCH 12, 2007
Creditor: UNION FIDELITY MORTGAGE, INC. (CFLID # 603 A945)
Address: 7979 IVANHOE AVENUE, LA JOLLA, CALIFORNIA 92037

Borrower(s): FRANCENA D. PENCE, RAMON MARTINEZ

Address: 392 CANAL COURT, FARMERSVILLE, CALIFORNIA 93223

Lines containing an "x" are applicable:

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled | ☐ Total Sale Price The total cost of your purchase on credit including your down-payment of $ |
|---|---|---|---|---|
| 9.925 % | $674,141.33 | $190,762.22 | $864,903.55 | $ |

PAYMENTS: Your payment schedule will be:

| Number of Payments | Amount of Payment ** | When Payments Are Due Monthly Beginning | Number of Payments | Amount of Payment ** | When Payments Are Due Monthly Beginning | Number of Payments | Amount of Payment ** | When Payments Are Due Monthly Beginning |
|---|---|---|---|---|---|---|---|---|
| 12 | 767.03 | 05/01/07 | | | | | | |
| 12 | 824.56 | 05/01/08 | | | | | | |
| 11 | 886.40 | 05/01/09 | | | | | | |
| 444 | 1,878.80 | 04/01/10 | | | | | | |
| 1 | 1,866.87 | 04/01/47 | | | | | | |

_____ DEMAND FEATURE: This obligation has a demand feature.

__X__ VARIABLE RATE FEATURE: Your loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to you earlier.

INSURANCE: The following insurance is required to obtain credit:
    _____ Credit life insurance and credit disability   __X__ Property Insurance  _____ Flood Insurance  _____ Mortgage Insurance
    You may obtain property insurance from any insurer that is acceptable to the Lender.
SECURITY: You are giving a security interest in: 392 CANAL COURT, FARMERSVILLE, CALIFORNIA 93223
    _____ The goods or property being purchased  __X__ Real property you already own.
FILING FEES: $ 150.00
LATE CHARGE: If payment is more than _____ 15 _____ days late, you will be charged _____ 5.000 % of the payment.
PREPAYMENT: If you pay off early, you
__X__ may  _____ will not   have to pay a penalty.
_____ may  __X__ will not   be entitled to a refund of part of the finance charge.
ASSUMPTION: Someone buying your property
_____ may  __X__ may, subject to conditions  _____ may not   assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.
__X__ "e" means an estimate      all dates and numerical disclosures except the late payment disclosures are estimates.
    Each of the undersigned acknowledge receipt of a complete copy of this disclosure. The disclosure does not constitute a contract or a commitment to lend.

| Applicant FRANCENA D. PENCE | Date | Applicant RAMON MARTINEZ | Date |
|---|---|---|---|
| Applicant | Date | Applicant | Date |
| Applicant | Date | Applicant | Date |

** NOTE: Payments shown above do not include reserve deposits for taxes, assessments, and property or flood insurance.

FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT
05\17\06      DocMagic ... 800-649-1362
www.docmagic.com

00005

DATE: MARCH 12, 2007
BORROWER:   FRANCENA D. PENCE

LOAN #:  0050601442
PROPERTY ADDRESS:   392 CANAL COURT
FARMERSVILLE, CALIFORNIA 93223
MIN: 100453300506014426

## PREPAYMENT PENALTY ADDENDUM

THIS PREPAYMENT PENALTY ADDENDUM is dated MARCH 12, 2007 , and is incorporated into and amends and supplements the Note of the same date (the "Note") given by  UNION FIDELITY MORTGAGE, INC., A CALIFORNIA CORPORATION
(the "Lender"). The Note is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") covering the property (the "Property") identified in the Security Instrument.

The section of the Note entitled "Borrower's Right to Prepay" is replaced with the following new section:

BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid Principal is known as a "Full Prepayment." A prepayment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Partial or Full Prepayment, I will tell the Note Holder in writing that I am doing so.

Subject to the Prepayment Penalty specified below, I may make a Full Prepayment or Partial Prepayments of my obligation. The Note Holder will use all of my prepayments to reduce the amount of Principal that I owe under the Note. If I make a Partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment.

If within the first    THIRTY-SIX    months after the execution of this Note, I make prepayment(s), the total of which exceeds twenty (20) percent of the original Principal amount of this Note, I agree to pay a Prepayment Penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) during the twelve (12) month period immediately preceding the date of the prepayment exceeds twenty (20) percent of the original Principal amount of this Note. Interest will be calculated using the rate in effect at the time of prepayment. I will pay this Prepayment Penalty regardless of whether I sell the Property or refinance the loan with the same Lender or Note Holder.

All other terms and conditions of the above referenced Note remain in full force and effect.


FRANCENA D. PENCE _____          Borrower

_____          Borrower

_____          Borrower

_____          Borrower


Multistate Prepayment Penalty Addendum - (H-PPP)
FE-5201 (0412)

00006

# UNITED STATES
# DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# # 146468    — BH

## January 15, 2008
## 15:12:37

## Civ Fil Non-Pris
USAO #.: 08CV0089 CIVIL FILING
Judge..: WILLIAM Q HAYES
Amount.:                    $350.00 CK
Check#.: PC# 1144

## Total—> $350.00

FROM: PENCE V. UNION FIDELITY MORTAG
      CIVIL FILING

JS 44 (Rev. 11/04)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
FRANCENA D. PENCE, individually and on behalf of all others similarly situated

**(b)** County of Residence of First Listed Plaintiff ~~San Diego~~ Fresno County
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Marcus Jackson, Esq. 751 Center Dr., Suite 108-456 San Marcos, CA 92069 (760) 291-1755

### DEFENDANTS
UNION FIDELITY MORTGAGE, INC. and DOES 1 through 10 inclusive

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

'08 CV 0089 WQH JMA

### II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                           and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☒ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

### V. ORIGIN  (Place an "X" in One Box Only)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Violation of Truth in Lending Laws, 15 USC Section 1601, et seq.

Brief description of cause:
Class action for violation of Truth in Lending Laws and unfair business practices relating to adjustable rate loans.

### VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ unspecified

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

### VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE 1/15/08

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 146468   AMOUNT $350   1/15/08 BH   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____